OPINION OF THE COURT
Anthony J. Falanga, J.
This is a motion by the wife for an order setting the valuation date of the husband’s harbor pilot’s license as the date of trial and for a further order awarding her expert fees for the purpose of valuing said harbor pilot’s license as well as other licenses obtained by the husband during the marriage. The husband cross-moves for an order declaring his expectation of attaining a harbor pilot’s license to be his separate property not subject to equitable distribution. He also seeks an order allowing him to utilize marital assets for his own support and to pay counsel fees and directing the wife to apply marital assets under her control to support herself and the parties’ children during the pendency of the action.
The parties were married on November 18, 1989. There are three children of the marriage, Nicholas, born June 25, 1992; Michael, born December 27, 1993; and Matthew, born August 31, 1997.
The plaintiff is a registered nurse. She earned $34,000 in 1999 working two days a week. She resides with the children in the marital residence in Rockville Centre.
The husband graduated from Maritime College and obtained his Third Mate’s license prior to the marriage. He obtained a Second Mate’s license in December 1989, a month after the marriage and began work as a Second Mate in January 1990. He obtained a Chief Mate’s license in 1991 and a Master’s or *333 Captain’s license in 1995. Prior to June 1998, he was employed by Maritime Overseas. He earned $90,721 in 1997 and $34,546 through May 1998. This employment required frequent travel and three-month-long absences from home when he was at sea. In September 1998, he commenced employment as an apprentice harbor pilot in Pennsylvania at a salary of $13,000 per year. He alleges that it took him six years to get accepted as an apprentice as there are only 500 harbor pilot jobs in the United States. He contends that the wife encouraged him to accept the apprenticeship so that he could acquire a ‘land job” that would not require him to travel and spend so much time away from the family. He has alleged that he was “shocked” when the wife refused to relocate to Pennsylvania. The wife concedes that she approved of the husband’s ambition to become a harbor pilot but adamantly states that she did not want him to accept an apprenticeship which would necessitate relocation.
The husband presently earns $18,000 per year. Once he receives state and federal licenses, he anticipates earning $180,000 per year. He expects to finish his apprenticeship in October 2001. Assuming he passes a series of tests, he must purchase a share in the harbor pilot’s association at a cost of $150,000 in order to commence employment as a licensed harbor pilot.
From September 1998 through August 1999, the husband lived in rented premises in Pennsylvania. In August 1999, he utilized $150,000 of marital savings to purchase a home in Pennsylvania. His parents also contributed a significant sum toward the purchase of that premises and it is not encumbered. The wife and children spent school recesses and the summers of 1999 and 2000 with the husband in Pennsylvania. In October 2000, the wife commenced the instant action for divorce.
Since May 1998, the needs of the parties and their children have been met by the dissipation of marital assets. Shortly before commencing his apprenticeship, the husband used marital assets to purchase a $27,000 Mercury Mountaineer. In March 2000, he sold marital real property in Florida. The net proceeds of the sale, $20,000, were divided equally between the parties. In October 2000, the wife realized $7,000 from the sale of the parties’ AT&T stock. She retained $5,000 and gave $2,000 to the husband. The husband did not provide any support to the wife and children thereafter until he sent her a check in February 2001 for $1,000. On February 2, 2001, the wife moved for omnibus pendente lite relief.
*334 Pursuant to orders dated March 27, 2001 and May 16, 2001, the court determined that the interim needs of the wife and children could be met only through the further dissipation of marital assets. The husband was directed to liquidate non-tax-deferred marital assets under his control in the sum of $2,000 a month to provide for the interim needs of the wife and children until such time as said assets under his control were reduced below $45,000. Once such assets under the husband’s control fell below $45,000, the parties were ordered to alternate liquidating non-tax-deferred assets, under their respective control, in the sum of $2,000 a month to provide for the interim support of the wife and children. The husband’s updated statement of net worth, sworn to in August 2001, sets forth that he presently controls liquid non-tax-deferred marital assets of $44,000 and tax-deferred assets of over $350,000. The wife controls liquid non-tax-deferred assets of approximately $45,000 and tax-deferred assets of approximately $90,000. Neither party has provided the court with an accounting of the total sum dissipated to date for the support of the parties and their children from May 1998 to the present.
The wife now moves for an order declaring that the husband’s yet to be acquired harbor pilot’s license is a marital asset to be valued as of the date of trial, and for a further order awarding her expert fees of $7,500 to enable her to value the harbor pilot’s license as well as the husband’s Second Mate’s, Chief Mate’s and Master’s licenses. As the husband acquired the Second Mate’s license only one month after the marriage, and the Chief Mate’s license was subsumed in the Master’s license, the wife’s claim to equitable distribution with regard to said licenses is limited to the enhanced earnings value of the Master’s license in excess of the value of the Second Mate’s license (see, McSparron v McSparron, 87 NY2d 275; Finocchio v Finocchio, 162 AD2d 1044), and the court will therefore address only her claims for equitable distribution of the Master’s license and the harbor pilot’s license.
The husband contends that the wife is not entitled to a distributive award for the value of his Master’s license or for his prospect of obtaining a harbor pilot’s license. He asserts that his Master’s license is not a prerequisite for his apprenticeship as a harbor pilot and that as of the date of the commencement of the action, he had abandoned his career as a sea captain, leaving the Master’s license without value. He further asserts that as of the date of the commencement of the action he did not possess a harbor pilot’s license and that even if he obtains *335 said license prior to trial of the action, it would be his separate property not subject to equitable distribution. He asserts that as a general rule licenses are valued as of the date of the commencement of the action, and that in this case in particular, as he will be purchasing a share in the harbor pilot’s association with $150,000 of his separate property, his harbor pilot’s license, which he had not acquired as of the date of the commencement of the action, is not a marital asset subject to equitable distribution.
The wife responds that she is entitled to a distributive award for the enhanced earnings value of the abandoned Master’s license on the ground that the husband voluntarily terminated his career as a sea captain over her objection. She also contends that his “soon to be acquired” harbor pilot’s license is a marital asset in that it was acquired through the expenditure of marital savings. She asserts that said license should be given a value as of the date of trial and that she should be awarded a distributive sum for her equitable share of its enhanced earnings value.
With regard to the wife’s application, there are two issues before the court, to wit: (1) is the wife entitled to equitable distribution of the abandoned Master’s license, and (2) is she entitled to equitable distribution of the apprenticeship or yet to be attained harbor pilot’s license. The court has been unable to locate any dispositive precedent on either issue.
With regard to the issue of distributing the value of an abandoned license, the guidance provided by the relevant statute, Domestic Relations Law § 236 (B) (5) (d) (11), is limited to the requirement that when equitably distributing marital assets, the court must decide whether the abandonment of the license constituted wasteful dissipation of a marital asset. The only guidance found in relevant case law holds that wasteful dissipation of a marital asset is a relevant factor in determining whether the dissipated asset should be valued as of the date of commencement of the action or the date of trial (see, Wegman v Wegman, 123 AD2d 220). Neither said statute nor case precedent speaks to the issue of whether a nonlicensed spouse is entitled to a distributive award for an equitable share of the enhanced earnings value of the spouse’s voluntarily abandoned license. In deciding this issue, the court notes that while the husband has not pursued his career as a sea captain since 1998, there has been no showing that his license has been forfeited and it appears that there is no impediment to his resumption of that career at any time. His Master’s license remains both viable and of value.
*336 The law is clear that in determining child support and maintenance, a court may impute income to a party who has voluntarily reduced his or her earning capacity (see, Hickland v Hickland, 39 NY2d 1; Alfano v Alfano, 151 AD2d 530), or has hidden assets or refused to make them productive (see, Kay v Kay, 37 NY2d 632; Matter of Prill v Mandell, 237 AD2d 445). This court holds analogously, that a party’s unilateral and voluntary election to discontinue employment in the licensed profession does not necessarily defeat his or her spouse’s claim to equitable distribution of the enhanced earnings value of the marital portion of the party’s abandoned license. However, where the parties have jointly agreed that the licensed spouse should forego the employment governed by the license, a court may determine that the nonlicensed spouse waived any claim to the enhanced earnings value of the abandoned license. In the case at bar, the sharply contested issue of whether or not the wife consented to the husband’s voluntary decision to quit his job and accept an apprenticeship will be determined at trial.
As of the date of the commencement of the action, the husband had completed about two thirds of his apprenticeship. He will complete the apprenticeship prior to the trial. The court has no information as to when he will be eligible to take the necessary licensing examinations or how soon thereafter he might receive his harbor pilot’s license, assuming he passes said examinations. It is therefore unclear whether or not he has the ability to obtain the license by the date of the trial, and since he may, in fact, not obtain a harbor pilot’s license prior to trial, the court must decide whether a completed apprenticeship can constitute an asset subject to equitable distribution.
While the law is clear that a license is subject to equitable distribution (O’Brien v O’Brien, 66 NY2d 576), there is no precedent in the State of New York equitably distributing the value of an apprenticeship. The court must therefore determine whether an apprenticeship is an asset, in and of itself, which is subject to equitable distribution by virtue of the fact that it enhances a party’s earning capacity, or whether the governing precedent limits equitable distribution to tangible degrees, certifications and licenses. The court finds that a completed three-year harbor pilot’s apprenticeship is comparable to a law degree, which may be subject to equitable distribution, even where the law school graduate does not attain a license to practice law (see, McGowan v McGowan, 142 AD2d 355; see *337 also, Hassanin v Hassanin, 279 AD2d 550; Kaufman v Kaufman, 207 AD2d 528). Accordingly, this court holds that a completed apprenticeship which enhances a party’s earning capacity may be an asset subject to equitable distribution.
The law is well settled that an asset acquired by a party after the commencement of an action for divorce, which is not otherwise the product of the sale or exchange of marital property, is categorized as separate, rather than marital, and is not subject to equitable distribution (see, Vora v Vora, 268 AD2d 470; Lennon v Lennon, 124 AD2d 788). Here, as the apprenticeship or the license, if obtained prior to trial, will have been acquired after the commencement of the action, said assets will be subject to equitable distribution only if the court finds that they are the product of the sale or exchange of marital assets. For two years prior to the commencement of the action, and throughout the entire pendency of the action, it is clear that marital assets were depleted in order to permit the husband to pursue the apprenticeship which is a prerequisite to the harbor pilot’s license. During the three-year period of the apprenticeship, the husband had the demonstrated ability to earn approximately $300,000 by virtue of his Master’s license, but he chose not to continue his employment as a sea captain causing his family to expend marital savings for support. The court finds no distinction in the fact that marital assets were used to provide support rather than to pay tuition on behalf of the husband or purchase a business in his name. In this case, marital assets, in the form of savings and forfeited interest thereon, as well as three years of the husband’s unrealized earnings, were “exchanged” for the apprenticeship which is the prerequisite to a harbor pilot’s license, making the apprenticeship and/or the license assets subject to equitable distribution even though they will be obtained by the husband subsequent to the commencement of the action.
 For the purposes of equitable distribution, the valuation date of marital assets can be set at “anytime from the date of commencement of the action to the date of trial” (Domestic Relations Law § 236 [B] [4] [b]). A degree or a license, which enables one to engage in a profession, is an active asset which should generally be valued as of the date of commencement of the action since any appreciation in value after that date is ordinarily the product of the labors of the licensed spouse (see, McSparron v McSparron, supra; Lipsky v Lipsky, 276 AD2d 753; Wegman v Wegman, supra). With regard to the husband’s Master’s license, there has been no showing that the court *338 should depart from this general rule, and accordingly, the court holds that the Master’s license shall be valued as of the date of the commencement of the action, as if it had not been abandoned.
The general rule is, however, nothing more than a “helpful guidepost” intended to prevent unjust enrichment, and is not an immutable rule of law (see, Grunfeld v Grunfeld, 94 NY2d 696; McSparron v McSparron, supra). The appropriate date for measuring the value of a marital asset is left to the sound discretion of the trial court (see, McSparron v McSparron, supra; Lipsky v Lipsky, supra). In the case at bar, the apprenticeship/license will not be obtained until on or about the date of trial. To prevent unjust enrichment to the husband, to the significant detriment of the wife, and as the court has determined that the apprenticeship/license will be obtained, in part, through the “exchange” of marital assets during the pendency of the action, the court holds that the completed apprenticeship, or the license, if it is obtained as of the date of trial, shall be valued as of the date of the trial.
On the other hand, while the court has held that the wife may be entitled to an equitable share of the value of the abandoned Master’s license and has held that the trial date value of the apprenticeship/license is an asset subject to equitable distribution, the wife will be unjustly enriched if she is awarded an equitable share of both the Master’s license and the apprenticeship/license. The court holds that if it is determined at trial that the wife consented to or acquiesced in the abandonment of the Master’s license, she will be deemed to have waived her claim to an equitable share of that asset and would be relegated to pursue a claim for an equitable share of the value, as of the date of trial, of the apprenticeship/license. If it is determined by the trial court that the husband abandoned the Master’s license over the wife’s objection, the wife shall be awarded the greater of either her equitable share of the Master’s license or the apprenticeship/license.
The court will therefore entertain expert testimony, at trial, with regard to the value of the Master’s license and the apprenticeship/license. As the wife’s application for an award of expert fees is not supported by the requisite expert’s affidavit, her application is denied, with leave to renew (see, Darvas v Darvas, 242 AD2d 554; Ahern v Ahern, 94 AD2d 53). In passing, the court observes that it would appear that the interests of the parties may be best served by their joint retention of a neutral expert. Counsel for the parties are directed to appear *339 for a conference to discuss the possible retention of a neutral expert and to address the selection of an appropriate trial date on October 11, 2001 at 2:00 p.m.
With regard to the husband’s motion, that portion which seeks an order directing the wife, in alternate months, to begin utilizing marital assets under her control at the rate of $2,000 a month, to meet her interim needs and those of the children is granted effective November 2001. The portion of his motion which seeks an order permitting him to use marital assets to provide for his own interim support and to pay his counsel fees is denied. As set forth herein above, he has already utilized $189,000 in marital assets for his own interim needs. It appears that he has access to sufficient separate assets to enable him to purchase a $150,000 membership in the harbor pilot’s association, and he has not demonstrated that he is unable to meet his present needs on his current earnings.