■ GUY WYSER-PRATTE, Respondent-Appellant, v VIVIAN WYSER-PRATTE, Appellant-Respondent. [892 NYS2d 334]—

The proportional division of the assets of plaintiff's brokerage and investment management companies was based on the lower court's assessment that when plaintiff married, he already possessed substantial business assets, as well as the skills that allowed him to earn the "extraordinary" income the parties enjoyed during the marriage. While defendant contributed to the further development of the business by, among other things,

decorating and renovating the parties' residences to create impressive surroundings in which to entertain plaintiff's clients and potential investors, the 35% allocation was reasonable under all the circumstances (*see McKnight v McKnight*, 18 AD3d 288 [2005]).

The court properly treated the couple's trading accounts with plaintiff's brokerage business as business assets. The accounts were managed solely by plaintiff (*see Orofino v Orofino*, 215 AD2d 997, 998 [1995], *lv denied* 86 NY2d 706 [1995]), who invested the funds in a manner intended to improve his companies' returns. As such, the accounts were an integral part of the business.

We do not agree, however, with the court's treatment of the deferred incentive fees owed to the investment management company as business assets subject to the 65%/35% division, and modify accordingly to equalize each party's share of this item at 50%. Although these fees, which total $31,020,400, were earned by plaintiff's company for managing a hedge fund during 1996 through 2000, plaintiff caused the company to defer receipt of payment from the fund, and they remain unpaid. Upon their payment to the company, which is a subchapter S corporation, the fees would be taxable to plaintiff as income, and as plaintiff acknowledges, he deferred their receipt to postpone paying personal income tax. Plaintiff also claims that the deferral was intended to benefit the fund's performance by increasing the amount available for investment. However, under the circumstances, where plaintiff chose not to realize profits from his business that were earned years before the commencement of this action, the deferred fees constitute marital property to be divided equally.

The court correctly recognized that defendant's share of the deferred fees must be reduced by 48.77%, which the parties stipulated would be the applicable tax rate for the fees. These incentive fees were not intangible assets whose valuation depended on the occurrence of a contingent event (*compare Harmon v Harmon*, 173 AD2d 98 [1992]); rather, they constitute earned income in a definite amount whose receipt will lead to certain tax liability (*see Wechsler v Wechsler*, 58 AD3d 62 [2008], *appeal dismissed* 12 NY3d 883 [2009]).

Accordingly, in connection with the deferred fees, defendant is awarded 50% of their post-tax value of $15,896,135, which equals $7,948,067, or an increase of $2,384,420 from the lower court's award of $5,563,647.

We find no grounds for disturbing the lower court's other determinations. The court rejected defendant's claim that a $1

million note on the couple's Bedford property was a fiction after weighing the credibility of conflicting testimony, and accordingly reduced the in-kind distribution to plaintiff by the amount of the note. It was also reasonable for the court to take into account that defendant's father prepared the note, yet she did not call him to testify.

The court appropriately concluded that defendant had only presented evidence that plaintiff had used $74,000 of marital property to satisfy premarital tax liens, and so denied her claim that he had used greater sums. While plaintiff had deposited sale proceeds of separately owned properties into the couple's brokerage accounts, from which other marital assets were purchased, the court appropriately credited him for the purchase price (but not the increased sale value) of these separate properties (*see* Domestic Relations Law § 236 [B] [5] [d] [13]; *Heine v Heine*, 176 AD2d 77, 84 [1992], *lv denied* 80 NY2d 753 [1992]).

It was also reasonable for the court to find that the value of certain artwork would be shared equally. While the court rejected plaintiff's testimony that this art belonged to a third party, there was no credible evidence that plaintiff had acted improperly so as to justify an unequal award (*cf. K. v B.*, 13 AD3d 12, 18-19 [2004], *lv denied* 4 NY3d 878 [2005]; *Davis v Davis*, 175 AD2d 45, 48 [1991]; *see* Domestic Relations Law § 236 [B] [5] [d] [11]). Moreover, defendant offered no proof of her claim that the artwork was worth more than the court's valuation.

It was reasonable to deny defendant's request for counsel fees since the equitable distribution will provide her with adequate funds to pay her attorney (*see Sementilli v Sementilli*, 102 AD2d 78, 91 [1984]). The court's denial of prejudgment interest under CPLR 5001 recognized that plaintiff had been paying pendente lite maintenance totaling more than $3 million, and was within its discretion (*see Rubin v Rubin*, 1 AD3d 220, 221 [2003], *lv denied* 2 NY3d 706 [2004]). While interest from the decision to the entry of final judgment is mandatory (CPLR 5002), the court continued the pendente lite award in lieu of interest.

Finally, as to plaintiff's argument that the judgment overstates the distributive award to defendant by miscalculating the credit for her separate property, the court's method for arriving at this figure does not merit review, given that the calculation was one of numerous carefully reasoned steps used to equitably distribute assets in this complex case. However, since defendant concedes that the judgment awarded her $17,645 more than the court intended, we reduce the increased judgment to her by that amount. The matter is remanded for entry of a judgment

of divorce reflecting our modification of the award. Concur— Mazzarelli, J.P., Sweeny, Catterson, Freedman and Román, JJ.